```
                                                                          C/M
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
LYDIA BELLEVUE,                                             :   **MEMORANDUM**
                                                            :   **DECISION AND ORDER**
                                Plaintiff,                  :
                                                            :   19-cv-652 (BMC) (LB)
                - against -                                 :
                                                            :
EXXON MOBILE CORPORATION,                                   :
CITIBANK, NA, CITICORP CREDIT                               :
SERVICES, INC., and JOHN DOE,                               :
                                                            :
                                Defendants.                 :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This is a *pro se* action under the Fair Credit Reporting Act, 15 U.S.C. § 1692 *et seq.*, and state law contending that defendants failed to honor plaintiff's request for documents showing the history of activity in her credit card account and then wrongly listed the account as "late pay" when it was not. Defendants have invoked the arbitration clause in her credit card agreement and moved for a stay of this case pending arbitration. Plaintiff has not opposed the motion, but I have considered what arguments might be made on her behalf because she is *pro se*. My conclusion is that the arbitration clause controls, and the case is accordingly stayed pending plaintiff's commencement and resolution of arbitration proceedings in the manner provided by the credit card agreement.

## BACKGROUND

According to the complaint, plaintiff obtained a co-branded credit card from defendant Exxon Mobile, as the merchant, and the two Citibank defendants, as the issuing bank (if each

Citibank defendant has a separate role, it is not clear) in April, 2016. Upon opening the account, she authorized automatic payment from her checking account for the statement balance due each month.

However, by August 2016, she had apparently forgotten that she had granted this authorization. In August she made a manual payment of $52.77 five days before the balance due date. The amount she paid manually was actually a few dollars more than the statement balance, $48.31, an amount which was automatically deduced from her checking account on the due date.

A similar thing happened in October 2016. Plaintiff manually paid $96.60 on the same day that the defendants' debited her checking account for $93.85, which was the balance due that day.

Plaintiff did not realize that she had erroneously made these manual payments until April 2017. She then entered into a continuing dialogue with at least two Exxon accounting employees, requesting copies of her monthly statements, the closing of her account, and a statement of any balance due. The first representative with whom she spoke told her that she had a balance due of $13.90. But no one complied with her request for account statements, or the adjustment of the account to reflect her manual overpayments, nor, at that time, did they accede to her request to close the account. (The complaint is not clear why there was a balance due if plaintiff had made overpayments, but perhaps that is why she kept requesting information.)

Plaintiff's efforts to get to the bottom of the problem bore no fruit until late February 2018, when Exxon sent her a letter saying it had reviewed the account, her payments on it were late, and the account was properly classified that way. But they still did not give her copies of her account statements, nor did they account for her manual overpayments, nor did they explain

why the account still showed as open, apparently accruing fees, when she had asked for it to be closed.

Worse than that (according to the complaint), defendants reported plaintiff as a late payer to the various credit reporting agencies. This negatively impacted her credit standing. In fact, when plaintiff finally received the statements she had requested in November 2018, the latest statement showed a credit balance of $2.04. Defendants repeatedly refused to correct the negative credit report of the account.

The amended complaint contains three largely duplicative claims for relief: FCRA, negligence, and "tort." For her reputational and emotional damages, plaintiff seeks $656,500.00.

## DISCUSSION

Defendants' motion to compel arbitration is based on a provision in the credit card agreement. The credit card agreement states:

> **ARBITRATION**
>
> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*
>
> **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**
>
> **Covered claims**
>
> - *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
>
> - **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

The agreement provides for arbitration before the American Arbitration Association. It contains some consumer-friendly provisions, like excluding actions brought in small claims court from arbitration, and preventing defendants from commencing arbitration to collect any past due amount unless the consumer sues in court first. Beyond that limitation, the agreement gives either party an offensive and defensive option if that party wishes to arbitrate: "To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite fees to the AAA." Thus, by filing their motion to compel in this action, defendants have triggered the application of the arbitration clause to the extent it applies to this dispute.

I can find no reason why it would not. The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held on several occasions that there is a strong federal policy favoring arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339-40 (2011). Indeed, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an

arbitration agreement has been signed." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (internal quotation marks omitted).

Here, there is no ambiguity about the applicability of the clause nor its scope. It is as broad as lawyers could make it. It covers "any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship." The dispute at issue in this case falls within more than one, and possibly all, of the listed arbitrable categories.

The only other issue I have considered on plaintiff's behalf is that the agreement is only between Citibank and plaintiff; Citibank's co-brand partner, Exxon is not mentioned. But the agreement generically covers that adequately as well by providing that an arbitrable claim "also includes Claims made by or against anyone connected with us … ." A co-branded credit card seems quite clearly to "connect" Citibank and Exxon. See Clarke v. Alltran Financial, LP, No. 17-cv-3330, 2018 WL 1036951 (E.D.N.Y. Feb. 22, 2018).

As defendants point out, numerous courts have enforced identical or similar arbitration clauses. See, e.g., McCormick v. Citibank, NA, 15-cv-46, 2016 WL 107911 (W.D.N.Y. Jan. 8, 2016); Carr v. Citibank, N.A., No. 15–cv–6993, 2015 WL 9598797 (S.D.N.Y. Dec. 23, 2015); Shetiwy v. Midland Credit Management, 959 F. Supp. 2d 469 (S.D.N.Y. 2013). The federal policy favoring arbitration requires that result here.

## CONCLUSION

Defendants' [8] motion to compel arbitration is granted. This case is stayed pending a report to the Court that arbitration has concluded or a motion to confirm the arbitral award, notice of which the prevailing party is required to file in this Court within 30 days of the

arbitration agreement has been signed." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (internal quotation marks omitted).

Here, there is no ambiguity about the applicability of the clause nor its scope. It is as broad as lawyers could make it. It covers "any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship." The dispute at issue in this case falls within more than one, and possibly all, of the listed arbitrable categories.

The only other issue I have considered on plaintiff's behalf is that the agreement is only between Citibank and plaintiff; Citibank's co-brand partner, Exxon is not mentioned. But the agreement generically covers that adequately as well by providing that an arbitrable claim "also includes Claims made by or against anyone connected with us … ." A co-branded credit card seems quite clearly to "connect" Citibank and Exxon. See Clarke v. Alltran Financial, LP, No. 17-cv-3330, 2018 WL 1036951 (E.D.N.Y. Feb. 22, 2018).

As defendants point out, numerous courts have enforced identical or similar arbitration clauses. See, e.g., McCormick v. Citibank, NA, 15-cv-46, 2016 WL 107911 (W.D.N.Y. Jan. 8, 2016); Carr v. Citibank, N.A., No. 15–cv–6993, 2015 WL 9598797 (S.D.N.Y. Dec. 23, 2015); Shetiwy v. Midland Credit Management, 959 F. Supp. 2d 469 (S.D.N.Y. 2013). The federal policy favoring arbitration requires that result here.

## CONCLUSION

Defendants' [8] motion to compel arbitration is granted. This case is stayed pending a report to the Court that arbitration has concluded or a motion to confirm the arbitral award, notice of which the prevailing party is required to file in this Court within 30 days of the

termination of arbitration proceedings.  If plaintiff does not provide notice to the Court within 30 days that she has commenced arbitration pursuant to the procedures in the credit card agreement, this case will be dismissed without prejudice.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
April 2, 2019